**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MARCUS TEAGUE | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | DOCKET NO. 2:26-cv-5694 |
| | ) | |
| ANTHONY LETIZIO, DO | ) | |
| *Defendant*. | ) | JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff Marcus Teague, by his attorneys at the Mizner Law Firm, files this Complaint and states as follows:

### A. Parties.

1. Plaintiff Marcus Teague is an adult individual who at all relevant times was incarcerated at SCI Phoenix, located at 1200 Mokychic Drive, Collegeville, PA 19426.

2. Defendant Anthony Letizio, DO is an adult individual who, at all relevant times, was working at the Pennsylvania Department of Corrections as a medical provider, who provides services including at SCI Phoenix. At all relevant times, Defendant Letizio was acting in his capacity as a medical provider for the Department of Corrections, under color of state law. Defendant Letizio is being sued in his individual capacity.

3. Plaintiff is not seeking recovery from Defendant's employer(s). The sole source of Plaintiff's recovery in this case is alleged to be, and specifically limited to, Defendant's personal assets, including any professional liability insurance coverage which they have obtained or been provided, and any funds available through Pennsylvania's MCARE fund.

1

**B. Jurisdiction and Venue**

4.      This Complaint includes claims made pursuant to the Civil Rights Act of 1964, 42 U.S.C. § 1983.

5.      This Honorable Court has jurisdiction over these federal claims pursuant to 28 U.S.C. §§ 1331 & 1343.

6.      This Complaint also includes pendant state law claims, over which this Honorable Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

7.      Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this claim occurred within the territorial jurisdiction of this District and the Defendants are subject to personal jurisdiction within this District.

**C. Facts**

8.      Mr. Teague was incarcerated at SCI Phoenix at all relevant times to this Complaint.

9.      He is currently fifty-six years of age.

10.     He was injured in 2017 while playing basketball, when another player fell on his right leg, and has suffered from significant pain ever since.

11.     In 2021, he underwent arthroscopic surgery to correct meniscal tears in his right knee.

12.     Then, in early 2022 he began to suffer an increase in knee pain after reinjuring himself.

13.     He was referred to physical therapy by Dr. Anthony Letizio, the site medical director at SCI Phoenix, on January 31, 2022.

2

14.     On February 16, 2022, Dr. Saeed Bazel gave Mr. Teague a steroid injection in his right knee for chronic pain and osteoarthritis.

15.     However, by April 26, 2022, PT John Waters recorded that physical therapy was failing to address Mr. Teague's condition, and that he was actually getting worse: "Increased right knee pain. He reports pain all day every day. He reports increased crepitus, locking and popping…. PT and compliance with home exercise programs has not yielded positive results. Inmate needs Physician assessment at SCI PHX for need for right knee TKA. Consult should follow for Ortho."

16.     Despite that, on May 2, 2022, Vanessa Oti-Akenten, PA assessed Mr. Teague with right knee osteoarthritis and planned for "Naprosyn as needed for pain.  Continue physical therapy. Will discuss the possibility of right knee replacement with physical therapist and medical team." She later added an addendum to her note, indicating she had reviewed Mr. Teague's September 2021 right knee x-ray and August 2020 MRI which confirmed moderately narrowed joint space with proliferative bone spurring , tearing throughout lateral and medial meniscus and articular cartilage loss.

17.     On June 24, 2022, Joseph Walsh, PA decided to start a trial of Celebrex, another antiinflammatory medication, due to Mr. Teague's right knee pain.

18.     Finally, on July 28, 2022, Kirklin Mitchell, PA wrote that "he has taken Naprosyn in the past with no relief. When he was last seen in June 2022 he was given a prescription for Celebrex and feels it did not help him at all." PA Mitchell's treatment plan was to "put in consult for the patient to see an orthopedist."

19. Thus, by July 2022, Mr. Teague's providers at SCI Phoenix recognized and documented that he had failed the conservative treatment of anti-inflammatory medication, physical therapy and steroid injections.

20. On September 20, 2022, Mr. Teague was seen by an orthopedic specialist, Michael Yang, MD Montgomery Orthopedics Associates, who recommended additional physical therapy and referral to Dr. Merahasemi for possible cartilage repair.

21. Despite Dr. Yang's recommendation, no further referral was made by anyone at SCI Phoenix.

22. That same day, Dr. Letizio reviewed Dr. Yang's recommendation, and ordered Mr. Teague back to physical therapy, but did not refer him to Dr. Merahasemi or anyone else for surgical repair of his knee, nor did he document why he had declined to follow Dr. Yang's recommendation.

23. PA Oti-Akenten was also aware of Dr. Yang's recommendation, as she wrote on October 6, 2022, that "Pt had an ortho consultation on 9/20/22 and surgical repair of right knee is being considered." However, she did not place a referral to Dr. Merahasemi, nor document any reason for her failure to do so.

24. On December 20, 2022, PT Waters noted that Mr. Teague was still experiencing "spontaneous buckling and locking" of his knee, and was "awaiting follow-up with orthopedic doctor."

25. On January 17, 2023, PT Waters noted that Mr. Teague was using a cane to walk had decreased ability with simple activities of daily life, and was displaying "visible discomfort" in the right knee. PT waters also noted that Mr. Teague "is a candidate for Orthopedic consult to

4

determine the need for further testing/intervention for advancing right knee degenerative joint disease."

26.    On March 14, 2023, PT Waters noted that Mr. Teague "was out to ortho 9-20-22 and requested for follow-up. The inmate continues to wait for follow-up visit."

27.    Finally, on March 27, 2023 - over six months after Dr. Yang recommended referral to Dr. Merahasemi for a surgical evaluation - Dr. Letizio referred Mr. Teague to Einstein Orthopedics, noting the same had been "approved by Collegial," meaning that the DOC's medical provider's "collegial review board" was allowing Mr. Teague to be sent out of the prison for an outside medical consultation.

28.    Consequently, on June 1, 2023, Mr. Teague was sent back to the same orthopedic specialist, Dr. Yang, who nine months earlier had referred him to Dr. Merahasemi for a surgical consultation.

29.    Unsurprisingly, once again Dr. Yang assessed Mr. Teague with "right knee degenerative joint disease and meniscus tear," planned for an updated MRI and once again recommended "follow up with Dr. Merahasemi for possible cartilage repair evaluation."

30.    The next day, Dr. Letizio submitted a referral for Mr. Teague's MRI, but did not mention any referral to Dr. Merahasemi for a surgical evaluation.

31.    On August 16, 2023, the MRI indicated that Mr. Teague had suffered a high grade partial tear of ACL, knee joint effusion, tricompartmental degenerative changes, including joint space narrowing, bone spurs, and a tear of the anterior horn of the lateral meniscus.

32.    Finally, on August 30, 2023, Dr. Letizio referred Mr. Teague to Suburban Surgical for a surgical evaluation, but the appointment was not scheduled until late December, 2023.

33.     On December 20, 2023, Dr. Chandra Reddy, an orthopedic surgeon, assessed Mr. Teague with right knee pain due to osteoarthritis, and noted "patient has failed non operative treatment and wants to undergo knee replacement.  Surgery scheduled for right total knee replacement."

34.     That next day, Dr. Letizio referred Mr. Teague for a right total knee replacement.

35.     However, for reasons not explained or addressed in the medical records, Mr. Teague's right knee replacement never took place.

36.     The surgery was scheduled to take place in May 2024, but was postopned at the last minute due to a urinary tract infection found during the pre-operative work up.

37.     The surgery was not rescheduled by the providers at SCI Phoenix, for reasons which were not documented by anyone.

38.     On December 5, 2024, Mr. Teague was sent to a third orthopedic surgeon at Einstein Orthopedics, who recommended a referral to orthopedic surgeon Dr. Mirghasemi to evaluate him for biocartilage repair, as well as use of a lateral uniloader brace.

39.     On February 12, 2025, Dr. Letizio referred Mr. Teague to Dr. Mirghasemi at Einstein Orthopedics.

40.     Dr. Letizio noted a few days later on February 21, 2025, "given the fact he has exhausted all conservative treatments out there we will place a  consult for the specific ortho surgeon to likely undergo the biocotillage replacement."

41.     On March 20, 2025 Mr. Teague finally saw Seyedralireza Mirghasemi, MD, who ordered him to undergo an MRI of his right knee, and then follow-up with the MRI results.

42.    Mr. Teague underwent the MRI on April 15, 2025, which revealed "Worsening lateral compartment osteoarthritis with partial and fill-thickness cartilage degeneration. Progression of meniscal tearing."

43.    On June 4, 2025, Dr. Mirghasemi ordered that Mr. Teague be sent "to joint replacement surgeon for surgery consultation."

44.    Five months later, on November 3, 2025, Mr. Teague was returned to Dr. Mirghasemi, who noted, "the patient did not have any visit with the joint reconstruction service." Dr. Mirghasemi then referred Mr. Teague to joint replacement service for more evaluation.

45.    Unbelievably, to date, Mr. Teague has still not received definitive treatment for his knee.

46.    He has never been provided with surgery for his right knee, despite his providers and specialists repeatedly recommending the same since at least September 20, 2022 - nearly four years ago.

**Exhaustion of Administrative Remedies.**

47.    On April 14, 2025, Mr. Teague filed Grievance #1143508 against the SCI Phoenix medical department and administration, alleging deliberate indifference to his serious medical needs, explaining that all the medical staff was offering was renewal of medication for his right knee pain, despite the fact that such medications did not work to control his pain. He attached two pages of exhibits to show his "continuous history of consistent negligence."

48.    On April 28, 2025, Mr. Teague received an Initial Review Response denying his grievance, on the basis that "there is an active consult related to your sick call issue."

49.     Mr. Teague timely appealed on April 30, 2025, writing, "I still would like to get the proper treatment for my right knee, the ortho doctor said that after the MRI I would be getting the surgery…. I was told by Dr. Sevedalireza Mirghasemi, MD that after the MRI he was going to perform my surgery on 3-20-25 at Einstein, and it was supposed to have been rescheduled and that is what I am trying to get. Again, I was sent out on 4-22 to the wrong place so my needs are not being met."

50.     Mr. Teague's appeal was denied by the Facility Manager on May 15, 2025, who stated that the initial review response was appropriate, and that "other concerns raised in this appeal will not be addressed."

51.     Mr. Teague timely submitted his appeal to final review on May 21, 2025.

52.     On June 25, 2025, Mr. Teague's grievance received a final denial from the Secretary's Office of Inmate Grievances and Appeals.

53.     As such, his grievance is exhausted, and his claims related to the delay in treatment for his right knee are ripe for this Honorable Court's review.

## COUNT I - DELIBERATE INDIFFERENCE

*Marcus Teague*
*v.*
*Dr. Anthony Letizio*

54.     The averments in the preceding paragraphs are incorporated by reference, as if set forth in full herein.

55.     "Failure to provide medical care to a person in custody can rise to the level of a constitutional violation under § 1983 only if that failure rises to the level of deliberate

indifference to that person's serious medical needs." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995).

56. A "serious medical need" is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

57. A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

58. The serious risks associated with untreated knee damage are apparent to the average layperson, and were certainly apparent to Mr. Teague's medical providers, including Dr. Letizio.

59. Dr. Letizio had actual knowledge of Mr. Teague's serious medical condition by September 2022, when he reviewed the results of Mr. Teague's orthopedic evaluation.

60. Despite his actual knowledge of Mr. Teague's injured right knee and need for surgical evaluation and surgical treatment, over the next four years Dr. Letizio failed to take meaningful action to facilitate Mr. Teague's right knee replacement surgery.

61. As of September 20, 2022, the standard of care required that Dr. Letizio follow the orthopedic specialist Dr. Yang's recommendation and refer Mr. Teague to an orthopedic specialist for a surgical consultation.

62. Instead, Dr. Letizio violated the standard of care over and over as, through the next four years, he repeatedly confronted Mr. Teague's need for surgical repair of his knee and yet failed to take effective action to schedule the same.

63. Had Dr. Letizio provided medical care to Mr. Teague which complied with the standard of care, his right knee injury would have been resolved years ago.

64. Instead, Dr. Letizio's failure to timely refer Mr. Teague for surgical replacement of his right knee has forced Mr. Teague to live with the severe pain and decreased mobility caused by his right knee injuries.

65. As a result of Dr. Letizio's conscious disregard and deliberate indifference to Mr. Teague's serious medical need, Mr. Teague has suffered:

    a. Worsening of his right knee injury;

    b. Severe pain and suffering in his right knee;

    c. Limitations on his mobility, range of motion and strength in his right knee; and

    d. Mental anguish, and humiliation and embarrassment.

WHEREFORE, Plaintiff Marcus Teague requests that this Honorable Court enter judgment in his favor and against Defendant Dr. Anthony Letizio in excess of seventy-five thousand dollars ($75,000.00), along with all such other relief as allowed by law.

## COUNT II - PROFESSIONAL NEGLIGENCE

*Marcus Teague*
*v.*
*Dr. Anthony Letizio*

66. The averments in the preceding paragraphs are incorporated by reference, as if set forth in full herein.

67.    Defendant Dr. Letizio was responsible to ensure that Mr. Teague was timely diagnosed and timely treated for his injured right knee.

68.    Absent Dr. Letizio ordering Mr. Teague to see the surgeon, and directing the medical staff to schedule him for surgery, Mr. Teague was completely unable to obtain this treatment.

69.    As his medical provider, Defendant Dr. Letizio owed a duty of care to Mr. Teague.

70.    An aspect of this duty was to provide Mr. Teague with the minimum standard of care required for someone in his condition, and with his medical needs.

71.    Defendant Dr. Letizio owed a duty of care to Mr. Teague to ensure that his serious medical condition was timely diagnosed and treated, to minimize the serious risk to his health if his condition was allowed to progress.

72.    However, Defendant Dr. Letizio failed to timely execute this duty, by allowing years of delay in Mr. Teague's treatment, such that he still requires surgery to this day.

73.    Defendant Dr. Letizio failed to possess and/or exercise adequate medical skills, knowledge, experience and techniques for the proper treatment of Mr. Teague.

74.    The services and medical care, diagnosis, treatment and services rendered by Defendant Dr. Letizio were performed in a negligent and careless manner and not in accordance with professional standards required of the conditions presented by Mr. Teague.

75.    As a proximate result of the negligence by Defendant Dr. Letizio, Mr. Teague suffered the following:

a.    Worsening of his right knee injury;

b.    Severe pain and suffering in his right knee;

c.    Limitations on his mobility, range of motion and strength in his right knee; and

11

d.  Mental anguish, and humiliation and embarrassment.

WHEREFORE, Plaintiff Marcus Teague requests that this Honorable Court enter judgment in his favor and against Defendant Dr. Anthony Letizio in excess of seventy-five thousand dollars ($75,000.00), along with all such other relief as allowed by law.

Respectfully submitted,

MIZNER LAW FIRM

By: /s/ *Joseph Caufield*

PA Supreme Court ID 322823
Joseph Caulfield
jpc@miznerfirm.com

311 West Sixth Street
Erie, Pennsylvania 16507
(814) 454-3889

*Attorney for the Plaintiff*

**JURY TRIAL DEMANDED**

12